**22CV 446**

Katherine I. Hartley (SBN 50291)
PACIFIC JUSTICE INSTITUTE
P.O. Box 2131
Coeur d'Alene, ID 81616
Tel.: (858) 945-6924
Fax: (916) 857-6902
E-mail: khartley@pji.org

*Attorney for Plaintiff*

DATE FILED: November 23, 2022
CASE NUMBER: 2022CV446

FILED IN THE DISTRICT AND
COUNTY COURTS OF
EL PASO COUNTY, COLORADO

NOV 23 2022

SHERI KING
CLERK OF COURT

IN THE DISTRICT COURT, COUNTY OF EL PASO,
STATE OF COLORADO

TROY CARDENAS,

    Plaintiff,

v.

JACOBS TECHNOLOGY, INC.,

    Defendant.

Case No.:

**VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.]; VIOLATION OF RIGHTS UNDER THE COLORADO ANTI-DISCRIMINATION ACT**

Verified Complaint

EXHIBIT 1

## NATURE OF THE ACTION

1. The Plaintiff, Troy Cardenas, brings this action against Defendant, Jacobs Technology, Inc., a corporation in Colorado. This action is based on violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) and the Colorado Anti-Discrimination Act (C.R.S. § 24-34-402 et seq.).

2. The gravamen of this Complaint is that Defendant refused to accommodate, retaliated against, otherwise discriminated against, and subsequently terminated Mr. Cardenas because he asked for an accommodation for his sincerely held religious beliefs. Defendant knew or reasonably should have known that Mr. Cardenas had sincerely held religious beliefs, because he requested a religious accommodation. Defendant nevertheless failed to accommodate and terminated Mr. Cardenas in retaliation for seeking an accommodation.

## JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Jacobs because Jacobs does business in the State of Colorado, including El Paso County. Jacobs employed and subsequently terminated Mr. Cardenas within El Paso County.

4. This Court has jurisdiction over this action as a court of general jurisdiction pursuant to Colorado Const. art. VI, § 9.

5. Venue is appropriate in this Court pursuant to C.R.C.P. 98(c).

## PARTIES

### Plaintiff

6. At all times relevant herein, Mr. Cardenas resided in El Paso County and was an employee of Defendant Jacobs.

**Defendant**

7. Upon information and belief, Jacobs Technology, Inc. is an engineering and technology corporation headquartered in Dallas, Texas and has offices operating throughout the United States. At the time of the events giving rise to this Complaint, Plaintiff was employed by Jacobs as a Cable/Infrastructure Engineer at the Colorado Springs location.

**GENERAL ALLEGATIONS**

8. Mr. Cardenas was hired as a Cable/Infrastructure Engineer for Jacobs in August 2021.

9. Mr. Cardenas enjoyed his position with Jacobs. His dedication was evident in his diligence to obtain his BICSI certificate before December 19 (a full three months before the deadline) because Jacobs employees in that position received a $3,000.00 bonus for taking such initiatives.

10. Mr. Cardenas is a member of a nondenominational Church in Colorado Springs, Colorado.

11. On July 29, 2021, Mr. Cardenas registered for the BICSI training. He received a confirmation for the training on August 2, 2021. On August 4, Mr. Cardenas, at his own expense, reserved a flight, hotel, and car rental for a trip to Tampa, Florida, between October 11 and October 15, where the BICSI training was scheduled to take place.

12. On August 4, Mr. Cardenas was told by his supervisor to cancel all the reservations. He did. Jacobs did not have a travel restriction or mandatory vaccine policy as a continual condition for employment or employee travel at the time.

13. In September 2021, Jacobs implemented a mandatory COVID-19 vaccine policy for business travel.

14. In September 2021, President Biden issued Executive Order 14042, making it mandatory for federal employees or contractors with the federal government to be vaccinated. Jacobs was considered a federal contractor.

15. Before October 15, 2021, when Executive Order 14042 went into effect, Mr. Cardenas received an email from Cheri Falconer, the benefits specialist at Jacobs, that read, "At this time the vaccination is not a requirement; therefore, an exemption process has not been established."

16. After the religious accommodation request process was established, Mr. Cardenas timely filed the Employee Request for Religious Accommodation (COVID-19 Vaccination Exemption) (attached as Exhibit A) on October 28, 2021, explaining his religious beliefs. The documents submitted by Mr. Cardenas detailed his sincerely held religious beliefs of sanctity of life and sacredness of the human body as the temple of the Holy Spirit. Mr. Cardenas' request fully explained, with biblical citations, that his sincerely held religious beliefs prevent him from taking the vaccine.

17. Mr. Cardenas wanted to keep his position as Cable/Infrastructure Engineer, but because of his sincerely held religious beliefs against the vaccine, he was encouraged by his supervisor and the Human Resource department to consider two alternative positions that did not require BICSI "certification." The two alternate positions included jobs far outside the scope of the original contract. Specifically, the positions were either a Cable Installer or a Cable Technician; both of these positions are not of the same sort. However, since the trip to Tampa (the only location for the BICSI certificate training) required employees to be vaccinated, Mr. Cardenas was faced with having to choose between vaccination and employment. Jacobs outwardly appeared willing to keep Mr. Cardenas as an employee by

Verified Complaint

-3-

EXHIBIT 1

encouraging him to consider the two alternative positions, but, in reality, Jacobs sought to coerce Mr. Cardenas to get vaccinated through such an offer.

18. On December 8, 2021, Jacobs sent a letter to all the employees under contract, indicating that if employees were not vaccinated by January 18 they would be released by January 19.

19. On January 8, 2022, Mr. Cardenas received an email from his supervisor that he would not be granted a waiver to stay on the job site at Jacobs because he did not have the required certificate. On January 10, Mr. Cardenas was placed on company convenience leave.

20. Mr. Cardenas followed proper reasonable proceedings immediately after being hired and timely filed a religious accommodation as soon as he realized he was not going to complete the required BICSI certification within the agreed six months. Nonetheless, Jacobs terminated Mr. Cardenas.

21. Jacobs made no interactive effort to accommodate Mr. Cardenas except for the unreasonable offer to have him change jobs, relying on a process that gave no guarantees or even indications of what that job might be like, or what the benefits of that job might include.

22. Jacobs could have allowed Mr. Cardenas to travel by car instead of by plane to his training or to complete COVID-19 testing prior to travel. The only explanation for not making such accommodations was to coerce Mr. Cardenas to get the vaccine so he could have his travel sponsored by the company. Jacobs made no real attempt to accommodate Mr. Cardenas but blatantly discriminated against him because he had requested a sincerely held religious accommodation.

23. Jacobs claimed in its opposition statement to the EEOC charge that "Cardenas was not required to go on Jacobs sponsored travel, Cardenas could have obtained the training on his own time, or started his employment with the BICIS certification." This statement is

inconsistent with the timeline. Jacobs' travel restrictions were not in place until September, after Mr. Cardenas was hired and after Mr. Cardenas was told to cancel his BICSI certification training reservations. Therefore, the timeline of when the travel restriction policy was implemented proves that Jacobs did not want to accommodate Mr. Cardenas for his necessary travel. This is why Jacobs told Mr. Cardenas to cancel his travel reservations, because without an official policy in place, Jacobs would have to accommodate Mr. Cardenas.

24. On January 11, 2022, Mr. Cardenas filed a charge with the Equal Employment Opportunity Commission (EEOC). Mr. Cardenas eventually sought employment elsewhere.

25. Mr. Cardenas' religious beliefs were a motivating factor in his termination. The Defendant violated his state and federal rights under Title VII, and the Colorado Anti-Discrimination Act.

26. Mr. Cardenas' income and health insurance ceased immediately and unexpectedly, placing a large burden on him.

27. On August 31, 2022, Mr. Cardenas obtained a "Right to Sue" letter from the Colorado Civil Rights Division (CCRD). The CCRD has a work sharing agreement with the EEOC, which recognizes the common jurisdiction and goals of the agencies. A "Right to Sue" letter from either agency satisfies the requirements of both the EEOC and the CCRD. This letter is attached as Exhibit B to this Complaint.

## FIRST CAUSE OF ACTION
**Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.]
Termination and Retaliation on the Basis of Religion
(As Against Defendant)**

28. Plaintiff hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

29. Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2(a)(1), it is an unlawful employment practice for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

30. Mr. Cardenas was at all times relevant herein an employee and applicant covered by 42 U.S.C. 2000e, et seq., prohibiting discrimination in employment on the basis of religion. Defendant was at all times herein an employer for purposes of 42 U.S.C. 2000e, et seq.

31. Mr. Cardenas had a deeply and sincerely held religious objection to receiving the COVID-19 vaccine and requested a religious accommodation.

32. Mr. Cardenas was prohibited from attending BICSI training, which he was required to complete within the first six months of his employment, because Jacobs' policy was that all employees must be vaccinated in order to travel. Jacobs knew Mr. Cardenas did not get the vaccination because of his sincerely held religious beliefs.

33. Jacobs sought to segregate Mr. Cardenas from other similarly situated employees who were required to complete training, based on his religiously motivated conduct. Due to Mr. Cardenas' sincerely held religious beliefs, he did not get vaccinated. He was excluded from the training because of his religious accommodation request. But Mr. Cardenas was told that completion of the training is a job expectation and that failure to complete the training would result in discontinuation of his employment—an adverse job action. Jacobs deprived Mr. Cardenas of an opportunity to perform his job expectations. Jacobs refused to consider

reasonable accommodations that would allow Mr. Cardenas to complete the required BICSI training.

34. Mr. Cardenas could have been given the option to drive to Florida for the required training, rather than fly. Mr. Cardenas could have submitted COVID-19 testing prior to travel. Nevertheless, Defendant fired him.

35. In fact, Mr. Cardenas never received any type of communication from Defendant that Defendant had reviewed, considered, or rejected his request for religious exemption and accommodation.

36. Plaintiff was terminated for engaging in protected activity, specifically requesting a religious exemption and accommodation under Title VII.

37. Plaintiff's religious beliefs and practices were therefore a motivating factor in his termination.

38. Mr. Cardenas suffered significant damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

39. Defendant intentionally violated Mr. Cardenas' rights under Title VII with malice or reckless indifference.

40. Plaintiff is entitled to backpay, front pay, compensatory damages, punitive damages, attorney's fees, costs of suit, a declaration that Defendant violated his rights under Title VII, and an injunction preventing Defendant from enforcing their discriminatory policies.

41. Plaintiff is entitled to further relief as more fully set forth below in his Prayer for Relief.

## SECOND CAUSE OF ACTION
**Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.]**
**Failure to Provide Religious Accommodation**
(As Against Defendant)

42. Plaintiff hereby incorporates and realleges the preceding paragraphs as though fully set forth herein.

43. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., makes it an unlawful employment practice to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

44. Mr. Cardenas suffered significant damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

45. Defendant intentionally violated Mr. Cardenas' rights under Title VII with malice or reckless indifference.

46. Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, attorney's fees, costs of suit, a declaration that Defendant violated his rights under Title VII, and an injunction preventing Defendant from enforcing their discriminatory policies.

47. Plaintiff is entitled to further relief as more fully set forth below in his Prayer for Relief.

## THIRD CAUSE OF ACTION
**Violation of the Colorado Anti-Discrimination Act (C.R.S. § 24-34-402 et seq.) –**
**Discriminatory or Unfair Employment Practices**
(As Against Defendant)

48. Plaintiff hereby incorporates and realleges the preceding paragraphs as though fully set forth herein.

49. Under the Colorado Anti-Discrimination Act, it is further an unlawful employment practice for an employer to discriminate against an employee in compensation, terms, conditions or privileges of employment, because of the employee's religious creed.

50. The Colorado Anti-Discrimination Act is interpreted and applied in a manner consistent with Title VII. *See, Elder v. Williams*, 2020 CO 88, 477 P.3d 694.

51. Plaintiff was at all times relevant herein an employee of Defendant.

52. Defendant was at all times relevant herein an employer.

53. Plaintiff was at all times relevant herein a member of a protected religious class.

54. Defendant intentionally discriminated against Plaintiff by making an adverse employment decision against him—by terminating his employment.

55. Defendant demonstrated discriminatory animus toward Plaintiff by abruptly terminating his employment and showing callous indifference toward his sincerely held religious beliefs. Plaintiff was terminated for engaging in protected activity, specifically requesting a religious accommodation.

56. Defendant terminated Plaintiff's employment because of his religious creed. Defendant discriminated against the Plaintiff on the basis of his religious beliefs.

57. Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

58. Plaintiff is entitled to such other and further relief as set forth below in his Prayer for Relief.

# FOURTH CAUSE OF ACTION
### Violation of the Colorado Anti-Discrimination Act (C.R.S. § 24-34-402 et seq.) – Failure to Provide Religious Accommodation
### (As Against Defendant)

59. Plaintiff hereby incorporates and realleges the preceding paragraphs as though fully set forth herein.

60. Under Colorado Anti-Discrimination Act, it is an unlawful employment practice for an employer to terminate a person's employment because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer demonstrates that it has explored any available reasonable means of accommodating the religious belief or observance.

61. Plaintiff was a person and an employee of Defendant.

62. Defendant was at all times relevant herein employer of Plaintiff.

63. Plaintiff is a devout evangelical Christian. Defendant was aware of his sincerely held religious beliefs.

64. Like many evangelical Christians, Plaintiff holds strong beliefs based on his understanding of Scripture.

65. Although Plaintiff made every effort to attend and complete the required BICSI training, he was not allowed to travel to this training because he was not vaccinated against COVID-19. Defendant knew Plaintiff did not get the vaccination because of his sincerely held religious beliefs. Plaintiff was told this would affect his ability to stay employed by Defendant. This is an adverse job action.

66. Defendant refused to explore available, reasonable alternatives to allow Plaintiff to do his job. Defendant refused to engage in any timely, interactive, meaningful, or good faith process with Plaintiff to accommodate his sincerely held religious beliefs. In fact, Plaintiff

never received any type of communication from Defendant that Defendant had reviewed, considered, or rejected his request for religious exemption and accommodation.

67. Defendant's refusal to accommodate, or even explore possible accommodation of Plaintiff's religious beliefs, was a substantial motivating factor in Defendant's decision to deprive Plaintiff of his employment.

68. Plaintiff suffered significant damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

69. Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages, attorney's fees, costs of suit, a declaration that Defendant violated his rights, and an injunction preventing Defendant from enforcing their discriminatory policies.

70. Plaintiff is entitled to further relief as more fully set forth below in his Prayer for Relief.

**PRAYER FOR RELIEF**

WHEREFORE, MR. CARDENAS respectfully prays this Court grant relief as follows:

A. Award Plaintiff backpay, including past loss of wages and benefits, plus interest;

B. Award Plaintiff his front pay, including future wages and benefits;

C. Award Plaintiff other and further compensatory damages in an amount according to proof;

D. Award Plaintiff noneconomic damages, including but not limited to mental suffering;

E. Award to Plaintiff his reasonable attorney's fees and costs of suit;

F. Award Plaintiff punitive damages;

G. Enjoin Defendant from enforcing their discriminatory policies;

H.  Declare that Defendant has violated Title VII of the Civil Rights Act and the Colorado Anti-Discrimination Act; and

9.  Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

Dated:  November 17, 2022

/s/ Katherine I. Hartley
Katherine I. Hartley
PACIFIC JUSTICE INSTITUTE
P.O. Box 2131
Coeur d'Alene, ID 81616
Tel.: (858) 945-6924
Fax: (916) 857-6902
E-mail: khartley@pji.org

*Attorney for Plaintiff, Troy Cardenas*

## VERIFICATION

I, Troy Cardenas, am the Plaintiff in the above-captioned matter. I have read the VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.] and am familiar with same. The contents are true and accurate and known to me by personal knowledge except for those matters asserted on information and belief. As to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the United States and the State of Colorado, that the foregoing is true and correct. Executed this _____ day of November, 2022, in the County of _____, State of Colorado.

_____
Troy Cardenas

Verified Complaint

-12-

EXHIBIT 1